IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSEPH E. DAMRILL, | ) Civil No.: 1:13-cv-01109-JE |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

George J. Wall
1336 E Burnside, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Daphne Banay
Special Asst. U.S. Attorney
Office of the General Counsel, Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Joseph Damrill brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed his first application for disability benefits on April 22, 2005. After his application had been denied initially and upon reconsideration, a hearing was held before ALJ Joel Elliott. On September 26, 2006 the ALJ issued an unfavorable decision which became the final decision of the Commissioner when the Appeals Council denied request for review. This District Court affirmed the ALJ's decision that found that Plaintiff had not been under a disability from April 1, 2003 through September 26, 2006. Plaintiff sought no further appeal and therefore that decision is final and may not be challenged.

Plaintiff filed a second application for disability benefits on November 8, 2007. After the application was denied in an initial determination on April 14, 2008 it was not appealed.

Plaintiff filed a third application on August 25, 2008, alleging that he had been disabled since December 31, 2003 because of obstructive sleep apnea, a right rotator cuff injury, degenerative disc disease, depression, and anxiety.

After his application was denied initially and upon reconsideration, Plaintiff timely filed a request for an administrative hearing.

On November 23, 2010, a hearing was held before Administrative Law Judge (ALJ) Steve Lynch. Plaintiff; Plaintiff's significant other, Rebecca Roldan; and Scott Stipe, a Vocational Expert (VE) testified at the hearing.

In a decision dated January 27, 2011, ALJ Lynch found that Plaintiff was not disabled within the meaning of the Act.

On August 26, 2011, the Appeals Council granted request for review, vacated the ALJ's decision and remanded the case to an ALJ. Plaintiff and Robert Gaffney, a VE, testified at the remand hearing before ALJ Lynch.

In a decision dated December 23, 2011, ALJ Lynch reopened the determination on Plaintiff's November 8, 2007 disability benefits application but again found that Plaintiff was not disabled within the meaning of the Act. On June 11, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on March 14, 1967 and was 44 years old at the time of ALJ Lynch's December 2011 decision. He has an eighth grade education and no past relevant work experience. The relevant portions of the medical and other evidence of record will be addressed in the discussion below.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## **ALJ's Decision**

As an initial matter, the ALJ reopened the April 14, 2008 determination on Plaintiff's November 8, 2007 application.

At the first step of his analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 8, 2007, the prior application date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: obstructive sleep apnea, history of right rotator cuff injury, degenerative disc disease of the lumbar and cervical spine, chronic obstructive pulmonary disease, depression, anxiety somatoform disorder, and polysubstance abuse.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to perform light exertional level work subject to the following

limitations:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day. He should not climb ladders, ropes or scaffolds. He should not work at unprotected heights. He should avoid concentrated exposure to noxious fumes and odors. He is limited to not more than occasional stooping, crouching, crawling, and kneeling. He should do not more than frequent overhead reaching with the right arm. He is limited to simple, entry-level work. He should have no interaction with the public and only occasional and casual interaction with coworkers. He should not be required to perform team activities.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

At the fifth step of his analysis, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited laundry sorter and small product assembler as examples of work that Plaintiff could perform. Having concluded that Plaintiff could perform such work, the ALJ found that, as defined by the Act, Plaintiff had not been under a disability since September 27, 2006.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in failing to provide clear and convincing reasons for discrediting Plaintiff's testimony regarding his symptoms of fatigue; erred in rejecting the opinion of examining physician, Dr. Causeya; and improperly rejected lay witness evidence.

## I. Plaintiff's Credibility

Plaintiff argues that the ALJ's reliance on Plaintiff's failure to comply with treatment for his sleep apnea was error. Plaintiff also asserts that if his testimony were properly credited he would be disabled based on the testimony of the VE.

A. Standard of Review

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039). If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80

F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96–7. An ALJ may consider such factors as a claimant's inconsistent statements concerning his symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

B. Analysis

Plaintiff here produced evidence of underlying impairments that could reasonably be expected to produce some degree of the symptoms he alleged and there was no affirmative evidence of malingering. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding the severity of his symptoms and limitations. With respect to the ALJ's credibility determination, Plaintiff challenges only the ALJ's rejection of his testimony regarding the severity of his fatigue symptoms.

At his initial hearing in November, 2010, Plaintiff testified that his treating naturopath, Dr. Bajaj, prescribed use of a continuous positive airway pressure (CPAP) machine. Plaintiff

FINDINGS AND RECOMMENDATION – 8

testified that he tried the machine but that he could not use it because it caused him to be claustrophobic. Plaintiff testified that he used a nebulizer in the morning and at night before he goes to sleep so he can "breathe a little better." Plaintiff testified that he sleeps about an hour in the afternoon. Plaintiff also testified that he used medical marijuana on a daily basis.

At the remand hearing in December 2011, Plaintiff testified that he couldn't sleep with the CPAP machine due to feelings of claustrophobia, that he had been prescribed a nebulizer that "helps out with a little bit of the sleep" but that he continues to wake up two or three times a night. Plaintiff testified that he had made an agreement with Dr. Bajaj three weeks earlier to cease using medical marijuana in order to comply with the medical clinic's new policy and to continue to receive pain medication.

In treatment notes dated September 3, 2010, Dr. Bajaj noted that Plaintiff had been prescribed a CPAP machine that he had not been compliant in using. Plaintiff reported that he had "tried it a couple of times" but was frustrated by the fit of the mask and feelings of claustrophobia. Data from the device showed that Plaintiff had not used the machine sufficiently long enough each night to be of any benefit for analysis. Dr. Bajaj "strongly" discouraged Plaintiff from giving up on the treatment and indicated that Plaintiff would need a minimum of three to four months of consistent use of the CPAP to demonstrate effectiveness. Dr. Bajaj also indicated that Plaintiff should have an option to try a different face mask. Plaintiff agreed "after some resistance" to continue use of the CPAP machine for a longer period of time.

In treatment notes dated October 1, 2010, Dr. Bajaj noted that Plaintiff had returned the CPAP machine. Dr. Bajaj remarked that he felt strongly that Plaintiff should give the machine a longer trial period but noted that Plaintiff reported that the machine made him uncomfortable and that he felt it was exacerbating his sleeplessness.

In support of his credibility determination, the ALJ concluded that Plaintiff's credibility was undermined by "his poor work history, minimal findings on examination and history of daily drug use." In discussing Plaintiff's obstructive sleep apnea, the ALJ found that Plaintiff had some limitations but that evidence did not suggest "debilitating symptoms." The ALJ noted that it had been recommended that Plaintiff use a CPAP but that treatment records reflected noncompliance due to claustrophobia. The ALJ concluded that Plaintiff's failure to follow treatment recommendations undermined his credibility and that his marijuana use also undermined his allegations of breathing problems.

An ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective symptom testimony. Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284) (internal quotations omitted); Social Security Ruling 96–7p ("[a claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure").

Here, the ALJ noted that despite being prescribed a CPAP machine, Plaintiff used the machine for only a brief time. Although Plaintiff provided a reason for his noncompliance, there was no medical evidence that his resistance, over the repeated and emphatic efforts of Dr. Bajaj to persuade him to continue with the CPAP machine, were attributable to his medical conditions. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Based on evidence that Plaintiff stopped using the CPAP machine after only a very brief trial despite his testimony regarding his fatigue and the treatment notes indicating Plaintiff was strongly encouraged to continue treatment and suggesting the availability of alternative mask options, it was reasonable for the

FINDINGS AND RECOMMENDATION – 10

ALJ to conclude that the "level or frequency of treatment [was] inconsistent with the level of complaints" and that "there [were] no good reasons for this failure." SSR 96–7p; see also Tommasetti, 533 F.3d at 1039.

The ALJ here made specific findings justifying a decision to disbelieve Plaintiff's allegations, and those findings are supported by substantial evidence in the record.  Accordingly, this Court will not second-guess the ALJ's conclusions.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Here, Plaintiff has not shown error by the ALJ in discounting his fatigue symptom testimony.

## II.  ALJ's Rejection of Dr. Karla Causeya's Opinion

As noted above, Plaintiff contends that the ALJ's stated reasons for rejecting the opinion of examining psychologist, Dr. Karla Causeya, are unsupported by substantial evidence.

### A.  Evaluating Medical Opinion

The ALJ is required to consider all medical opinion evidence, and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti, 533 F.3d at 1041. An ALJ is not required to find a physician's opinion as to a claimant's physical condition or as to the ultimate question of disability conclusive. Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 2009). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990), and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician.  Andrews, 53 F.3d at 1043.

B. <u>Analysis</u>

On October 26, 2010, and November 2, 2010, examining psychologist, Karla Rae Causeya, Psy.D., performed a psycho-diagnostic evaluation of Plaintiff. Dr. Causeya also submitted a Mental Residual Functional Capacity Assessment (MRFCA). As part of the evaluation, Dr. Causeya administered a number of standardized tests, including the Comprehensive Trail-Marking Test (CTMT), the WAIS-IV Digit Span subtest, and the Personality Assessment Inventory (PAI). On the CTMT, which involves tasks that are "heavily influenced by attention, concentration, resistance to distraction and cognitive flexibility," Plaintiff scored in the "Severely Impaired" range. Plaintiff scored in the "Average" range on the WAIS-IV, which measures core working memory. On the PAI, Dr. Causeya described Plaintiff's results as indicating

> [t]he possibility of mild exaggeration of complaints and problems. Elevations in this range are often indicative of a cry for help, or of a markedly negative evaluation of oneself and one's life. The malingering index score indicates that [Plaintiff] was straightforward in his responses and does not indicate malingering . . . . Profile patterns of this type are usually associated with marked distress and severe impairment in functioning. The configuration of the clinical scales suggests a person with significant thinking and concentration problems accompanied by marked concerns about his physical functioning . . . .

Dr. Causeya opined that Plaintiff met the diagnostic criteria for Undifferentiated Somatoform Disorder, Attention-Deficit/Hyperactivity Disorder and Anxiety Disorder Not Otherwise Specified. She noted that Undifferentiated Somatoform Disorder is described by "having one or more physical complaints; symptoms which cannot be fully explained by a medical condition; the symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning . . ." and "the symptom is not intentionally produced or feigned." Dr. Causeya opined that Plaintiff had moderately severe limitations in activities of daily living, understanding and memory, sustained concentration and persistence,

social functioning, adaptation, and would have episodes of deterioration or decompensation in a work-like setting. Dr. Causeya primarily attributed Plaintiff's limitations to his preoccupation with his pain and discomfort and opined that his prognosis was "poor."

In completing Plaintiff's MRFCA, Dr. Causeya opined that Plaintiff had moderately severe limitations in all listed functional areas. She also indicated that typically encountered workplace stressors would likely increase Plaintiff's level of impairment and that a routine, repetitive, simple, entry-level job would exacerbate rather than mitigate Plaintiff's psychologically based symptoms.

The ALJ offered three specific reasons for giving Dr. Causeya's opinion little weight. I will address each of these reasons in turn.

First, the ALJ rejected Dr. Causeya's opinion because "[s]he reports the primary cause of the claimant's functional limitations is his preoccupation with pain and physical ailments (Exhibit 30F). However, the claimant has reported he is able to keep his mind off his pain when he is active and busy (Exhibit 19F-9)."

Plaintiff argues that the statement the ALJ attributes to him is a misstatement of the record. The document cited by the ALJ is an Occupational Therapy Progress Note dated March, 26, 2010. Plaintiff correctly points out that the treatment note quotes Plaintiff as saying that "I use my distractibility (due to ADHD) to keep me from thinking about the pain." The Note also documents that Plaintiff reported to his Occupational Therapist that, with activity, his pain is "no different than it ever is" and that the Occupational Therapist discussed with Plaintiff the importance of "finding meaningful activities to take his mind off his pain."

Defendant argues that the ALJ's inference was a reasonable one and that he properly rejected Dr. Causeya's opinion as inconsistent with the claimant's statements. This argument is

FINDINGS AND RECOMMENDATION – 13

unpersuasive. Plaintiff's statements that he uses his distractibility to help keep himself from thinking of his pain or that activities such as working in a flower bed or walking to and from a friend's house make his pain "no worse than it ever is." (Exhibit 19F-9) are not inconsistent with Dr. Causeya's opinion that Plaintiff is unable to obtain or maintain gainful employment. A claimant need not be utterly incapacitated to be eligible for benefits as "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair, 885 F.2d at 603 (citations omitted).

Dr. Causeya opined that Plaintiff's preoccupation with pain would prevent him from "sustained activities" and would make it difficult for him to concentrate, remember instructions or work-like procedures, and persist at tasks. Plaintiff's attempts to distract himself from his pain or to engage in activities that do not worsen his pain neither support the ALJ's inference that he is "able to keep his mind off his pain when he is active and busy" nor provide substantial evidence to support the ALJ's rejection of Dr. Causeya's opinion.

The ALJ also rejected Dr. Causeya's opinion because "the limitations she describes are not consistent with the treatment record which reflects good control of symptoms with treatment." The ALJ then cites a chart note from a primary care visit on February 9, 2007 and a chart note from a behavioral health visit on August 7, 2009. (Exs. 2F-21, 18F-1). The ALJ does not reference any specific entry in either note and offers no explanation for how these notes reflect any inconsistency between the limitations expressed in Dr. Causeya's opinion and Plaintiff's treatment record. Defendant correctly notes that inconsistencies are a legitimate basis upon which to discount a doctor's opinion. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir.1995) (ALJ may reject doctor's assessment that is inconsistent with records). However, the

ALJ must provide at least specific and legitimate reasons that are supported by substantial evidence in the medical record when rejecting opinions of an examining physician.  Andrews, at 1043. After careful review, I conclude that the ALJ failed to meet that standard in this instance.

Lastly, the ALJ rejected Dr. Causeya's opinion because the "subsequent opinion of Dr. [Donna] Wicher is more consistent with [the] treatment record and is given greater weight." Plaintiff argues that the ALJ erred in rejecting Dr. Causeya's opinion on the basis that it conflicted with Dr. Wicher's opinion regarding Plaintiff's limitations due to his Somatoform disorder.  Defendant argues that inconsistency with other medical reports is a proper basis for an ALJ to reject a medical opinion and that "Plaintiff's own alternate interpretation and weighing of the evidence does not establish that the ALJ erred . . . ."

On December 22, 2010, Clinical Psychologist, Donna Wicher, Ph.D., P.C., performed a Neuropsychological Screening Examination and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (MSSM).  Dr. Wicher based her assessment on her clinical interview with Plaintiff and a number of psychological tests, including the WAIS-IV and the MMPI-2-RF personality inventory.  Dr. Wicher observed no gross defects in memory or concentration during the interview and noted that Plaintiff's thought processes appeared to be intact and his affect appropriate.  WAIS-IV results placed Plaintiff in the Low Average Range of intellectual ability.  In describing Plaintiff's MMPI-2-RF results, Dr. Wicher noted that "[i]ndividuals who produce similar profiles report significant psychopathology and emotional distress as well as significant medical problems."  Dr. Wicher provided a number of diagnoses including Depressive Disorder Not Otherwise Specified (NOS), Anxiety Disorder NOS; Somatoform Disorder NOS, and "Polysubstance Abuse, presently using medical marijuana." She opined that Plaintiff had mild deficits in his ability to perform activities of daily living;

moderate deficits in social functioning; and moderate deficits in concentration, persistence and pace.  In completing the MSSM, Dr. Wicher indicated that Plaintiff's ability to understand, remember and carry out instructions was not affected by his impairment.  She also indicated that Plaintiff had mild limitations on his ability to interact appropriately with the public and to respond appropriately to usual work situations and changes in a routine work setting and moderate limitations on his ability to interact appropriately with supervisors and co-workers.

Plaintiff argues that it is unclear how the ALJ found Dr. Wicher's opinion more consistent with the treatment record than Dr. Causeya's opinion "when the two are not inconsistent with respect to Plaintiff's somatoform disorder, and Dr. Wicher relied on, and agrees with, the testing results conducted by Dr. Causeya.  Plaintiff also argues that the primary difference between the two opinions is that Dr. Causeya provided specific quantifications attributable to Plaintiff's Somatoform Disorder.  These arguments are unpersuasive.

The ALJ discussed Dr. Wicher's findings, gave her opinion significant weight,  and found it consistent with a capacity for simple work with no public interaction and limited interaction with coworkers.  He correctly noted that Dr. Wicher opined that Plaintiff did not have any limitations in his ability to understand, remember and carry out instructions, including simple instructions (Exhibit 29F-9).  The ALJ also cited the restrictions Dr. Wicher assigned to Plaintiff's ability to interact with the public and coworkers and noted that "[u]se of marijuana and narcotics could increase disinhibition, further increasing impulsiveness and decreasing persistence."

Although both doctors diagnosed Plaintiff with Somatoform Disorder and Dr. Wicher reviewed Dr. Causeya's reports and refers to an earlier diagnosis of Somatoform Disorder in her discussion, Dr. Wicher does not adopt the same extensive limitations assigned by Dr. Causeya.

FINDINGS AND RECOMMENDATION – 16

This distinction is recognized by Dr. Causeya herself, who submitted a letter to Plaintiff's attorney after reviewing, at his request, Dr. Wicher's evaluation report. Dr. Causeya writes

> Although we assessed [Plaintiff] very similarly, Dr. Wicher and I came to different conclusions when we judged his capacity to perform in the workplace . . . . Dr. Wicher indicates no impairment in the area of ability to understand, remember and carry out instructions. My judgement, in contrast, is that [Plaintiff] is so focused on his pain and physical ailments, that he could not pay attention long enough to understand, remember, or carry out instructions for any length of time . . . .

Thus, although the two opinions are consistent in their diagnosis of Somatoform Disorder they are inconsistent in their assessment of the Disorder's impact on Plaintiff's ability to sustain gainful employment. The ALJ is responsible for evaluating medical evidence, Carmickle, 533 F.3d at 1164, and for resolving ambiguities in the medical evidence. Tommasetti, 533 F.2d at 1041. Based upon my review of the medical record, I conclude that substantial evidence supports the ALJ's resolution of the ambiguities in the record and that his conclusion that Dr. Wicher's opinion was entitled to greater weight was reasonable. I, therefore, conclude that in rejecting the opinion of Dr. Causeya, the ALJ's reliance on the inconsistencies between her opinion and that of Dr. Wicher was not in error.

Though his first two reasons for rejecting Dr. Causeya's opinion are unsupported by substantial evidence, the ALJ's reliance on Dr. Wicher's opinion was a legitimate reason supported by the record and was sufficient to support rejection of Dr. Causeya's opinion. Because the ALJ provided at least one specific and legitimate reason for discounting Dr. Causeya's opinion, any error in providing the invalid reasons discussed above was harmless. See Carmickle, 533 F.3d at 1162 (ALJ's reference to invalid reason for discounting evidence was harmless error given that ultimate determination was supported by valid reasons); see also Stout,

454 F.3d at 1055 (mistake that is not prejudicial or is irrelevant to ALJ's ultimate conclusion as to disability is harmless).

### III. Credibility of Lay Witness Evidence

Plaintiff's significant other, Rebecca Roldan, submitted Third Party Function Reports dated December 14, 2007 and October 29, 2008 and testified at the November 23, 2010 hearing before the ALJ. Ms. Roldan testified she and Plaintiff had lived together for about five years. She testified that she does most of the cooking and the housework, that Plaintiff wakes up three or four times a night; that he experiences anxiety, especially out in public and that it is difficult to get him to focus on a task without his being distracted. Ms. Roldan testified that she and Plaintiff's mother had been supporting Plaintiff for most of the time she and he have been together. In her December 2007 Third Party Function Report, Ms. Roldan wrote that Plaintiff "doesn't do much of anything," that he thinks that people are getting into his room and stealing from him and talking behind his back. He goes outside "hardly ever" except occasionally to grocery shop or go tanning. In her October 2008 Report, Ms. Roldan reported that Plaintiff helps with the dishwasher and taking out the garbage, goes outside almost every day but usually needs to sleep during the day and mostly watches television.

Here, the ALJ found Ms. Roldan's statements to be "not entirely credible" because there was no evidence that Plaintiff was incapable of doing light household chores; Dr. Wicher found no significant deficits in memory or concentration and there was no evidence of paranoia in the treatment record. The ALJ correctly noted inconsistencies between the severity of Plaintiff's impairments as alleged by Ms. Roldan and the claimant's activities and the accepted medical evidence. An ALJ must provide reasons that are "germane" for discounting the statements of

third party witnesses. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir.2005). The ALJ satisfied that requirement here and I find no error.

## Conclusion

For the reasons set out above, a Judgment should be entered AFFIRMING the Commissioner's decision and DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 9, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 22nd day of January, 2015.

            /s/ John Jelderks
            John Jelderks
            U.S. Magistrate Judge